Good morning. We have two appeals that are scheduled for argument this morning. The first is Ricky Johnson v. Ted Paxton. Howard Walton Anderson III is here for the appellant Johnson. Jason Wehmeyer is here for Paxton. And Mr. Anderson, you may begin your argument. I'm going to start with HEC. As I noted in the brief, there is an issue as to HEC as to essentially some of these claims. The First Circuit has said that it's jurisdictional, which means it can't ever be waived. And so this is a case where you really do have to decide, is HEC jurisdictional, like the First Circuit says, or is it a defense, like the other circuits say? I wonder if you'd tell us a little bit about exhaustion. As you know, one of the reasons for the adoption of the Prison Litigation Reform Act is because Congress really wants to see if we can have these prisoner claims resolved administratively without the necessity of judicial intervention. And so here, I'm not able to identify any authority which addresses whether the exhaustion requirement applies to a plaintiff like we have here who is incarcerated but is no longer housed at the facility that the complaint relates to. Tell us a little bit about exhaustion and why. I know the district court went straight to the merits and avoided the exhaustion, but that's an important part of the Prison Litigation Reform Act. You've got to exhaust these claims before they come to court. I would agree. And so I guess that I disagree with the athletes here that you can't sort of pick and choose between going to the merits and doing exhaustion. I think that you do have to decide as a threshold matter, either there is no jurisdiction or there is proper exhaustion. Before you ever get to statute of limitations, before you get to failure to state a claim, before you get to anything else, you have to do that. His claims were not exhausted, right? That's clear from the record. What he says is that he attempted. So you have to exhaust using all available remedies. And again, it's a little bit unclear because I wasn't trial counsel, but it appears he says, one, I tried to exhaust, and so that's a factual question that the district court has to figure out. And then two, he says, oh, well, when I was moved from the Forsyth County Jail to the Georgia Department of Corrections, the jail didn't give me the form that I would use to exhaust, and so now I have no remedies available to me to exhaust. And again, I think that's a factual inquiry that the district court has to resolve if exhaustion hasn't been waived. But as I note, you know, in the unpublished decision that this court has from Brooks, if you, the whole point of exhaustion is to avoid expensive allegation for everybody. This case was pending a long time, including a trip up to this court here, and, you know, it's not clear to me why exhaustion wasn't teed up at the very beginning of the case because that's really what you're supposed to do. But having raised a motion to dismiss and not set exhaustion, the law is clear that you can waive exhaustion, so it's not a residual law. But, I mean, your client didn't object or raise the issue when it was first raised by the government, right? So he, in his objection to the report and recommendation, he did say, you know, I think that I have exhausted, I intended to exhaust, and so that's why the district court says, well, I'm not going to... Yes, but what I'm saying is when the government first raised the issue of exhaustion, your client didn't say, he's already forfeited, they've already forfeited that issue. In other words, we sort of have dueling forfeitures, right? So what do we do with that? Well, I guess, I think that you have to decide, you know, if you say, well, you can have multiple motions to dismiss, it's not a problem, right? And so it's only if you decide that Brooks is right, and that if you don't raise it, it's waived. Of course, there is plain error review that this court has if you don't say it. And again, here, the district court, you know, said, I'm not going to apply exhaustion, and so it's not like he would have filed a motion to reconsider in the district court or anything like that. He won on the issue as far as he was concerned. So some of the policies, you know, in terms of raising the issue don't really suggest that he should be penalized for agreeing with the district court that his claims were not subject to exhaustion, if that makes sense. Why couldn't he... I guess his argument is that he couldn't exhaust because he was transferred to a different facility, right? That is one of his arguments, yes. And then another one, which isn't entirely clear to me because of his pro se status, and one of them, he says that I attempted to exhaust, which could be I asked for the form and they didn't give me the form, and that's a factual question that you have to have a hearing about to decide that. So you do have to decide, the government can't say, well, you know, because it's not exhausted and the statute of limitations applies, you really have to know, are you making a decision on the merits or are you not making a decision on the merits? And so I think that you really have to tee that up. And the same is true with the jurisdictional issue, because you can't say, oh, well, because we think that the claims are bad on the merits, therefore, you know, it's either heck or it's affirmed. I mean, again, you either have jurisdiction or you don't, and so you have to sort of tee that up. And so it's not a legal issue. With respect to Heck in particular, I know that his Hall County case is even more complicated because he filed a petition for habeas corpus in federal court, saying that he should have been allowed to withdraw his guilty plea. And so you've got the ADEPA that says that you can't have a second or successive habeas petition without permission from the Court of Appeals, to the extent that he's trying to say, if only I would have had these things, I would have been allowed to withdraw my guilty plea. You know, that looks a lot like a challenge to the merits of his conviction. And again, the First Circuit says it's jurisdictional. I mean, I tend to think if you ask me, you know, what do I think the correct answer should be, I think it probably shouldn't be jurisdictional, but it's not a crystal clear question. So, I'm sorry, finish up with your thought on that. Yes, and so I would just say that it's not crystal clear to me, though, if you ask me, you know, if I were to write a law review article, what should the answer be, I would say that, you know, it shouldn't be, but it's certainly not clear, particularly in the context of you already have one habeas, and we've got the ADEPA bar for a second and successive petition. So let me ask you a question then about the merits. With respect to the access to the court's claim, it seems to me like your client may have a problem in showing that there was an injury that was inflicted. I'm not sure it's enough to say I might have gotten a better result. I think you have to show that there's a probability that there would have been a better or different result. And I don't see him saying that, so I want to give you an opportunity to address that. Well, some of his issues are, well, I would have won on the criminal side, and so you run back into the heck issue that we talked about. I know that, I think he said that he was prevented from filing an insurance claim about something, is my recollection, and so it's a prospect, it's a potential lawsuit that he might have had. Again, it's not crystal clear from the record. Maybe it's not enough there because he's pro se. I mean, don't you have to show that there was a likelihood of a different result? I'm just filing an insurance claim or an insurance lawsuit in and of itself doesn't seem like that provides the injury that one needs in order to satisfy the access to the court's claim. Well, I think there's a difference between a claim for damages and a claim for declaratory or injunctive relief. And I think, obviously, the standard is higher for damages because you've got to show, but for this, I would have gotten this money. But for declaratory or injunctive relief, are you trying to say, hey, I might have a lawsuit in the future. I shouldn't have to lose it because I don't have access to the courts. And again, his movement to the prison system, I don't think moots his claim. It's certainly relevant to the district court, you know, who has jurisdiction because it's discretionary. And so the district court could say, although I have jurisdiction to decide it because it's not moot, I decide that it's so, you know, in the interest of facts, I'm not going to exercise my discretion. But here, the district court didn't do that. He just said, I don't think that I'm allowed to hear this claim full stop. And I think that's a problem. I have a question about the motion to compel, especially as it relates to the initial denial of qualified immunity and the reversal of that decision here. I'm particularly interested in the issue with respect to whether or not, if he had had an attorney, if the court had granted his motion for appointment of counsel, would he have been able to press more effectively for the discovery surrounding this order of transfer? I think that there is a legitimate argument that there were questions about when Simmons received the transfer, what Simmons knew about the transfer, especially as it related to his hernia surgery. So can you talk to me a little bit about both the motion to compel and as it relates to his motion for appointment of counsel? I guess, first, if this court sends this case back to the district court for any reason, I was just appointed on another prisoner case. And what you all said in the unpublished decision was, well, why don't you reconsider? It was fine that you didn't appoint him one, but maybe you ought to reconsider that. And so that's what you did. And so that might be an appropriate thing to do here. Obviously, it is very difficult as a prisoner to do any litigation. You have to get the transcripts. You got to... And so I would say that, yes, Mr. Johnson is a more effective legal writer than a lot of other, pro se, prisoner cases that I get appointed to. But the fact of being incarcerated probably made it a challenge for him. And I would say that particularly if we got to go back for some other reason, I think you don't reach the motion to compel issue. You just say, why don't you re... Now that it's coming back for this complicated legal issue, why don't you now decide whether you should recruit counsel for him to help him do everything else? So I don't know that you have to necessarily rule on the motion to compel if you're going to send it back for some other reason. Just because you have discretion about how you order things and not... And so I would say if it's got to go back for, you know, a hearing on exhaustion, for example, you might suggest to the district court, you might reconsider whether you want to recruit counsel. And then that would avoid the issue. But I think, you know, he probably should have been appointed counsel. But again, it's discretionary. But he certainly faced challenges trying to get the evidence that he needed because of his status as a... I thank you, Your Honor. Thank you, Mr. Anderson. We'll hear from Mr. Wehmeyer. Thank you, Your Honor. May it please the Court. I'm Jason Wehmeyer. I'm here on behalf of the defense. And it sounds like at least Judge Wilson is most interested in exhaustion. So I'll talk briefly about that. But I'll take any questions that... Well, I mean, just speaking for myself, I am concerned because that's one of the... As I indicated, it's important. I guess Congress... That's one of the reasons why Congress passed the Prison Litigation Reform Act is because it wants these claims. There has to be an effort to resolve these claims administratively before they come to the court. And here the district judge did not... Just went straight to the merits. And so he's got exhaustive administrative remedies. He didn't file a grievance. And I guess the reason is because they moved him to a different facility. So since they moved him to a different facility, why shouldn't he be excused from the exhaustion requirement since he's no longer at the facility pertaining to his grievance? That's my concern. I understand. So, Your Honor, this happens with some frequency in these inmate litigation cases where a person is moved from one place to another. And the argument that you've articulated often comes up. I didn't have access to the grievance place where I was moved from or the grievance process where I was moved from, etc. It turns out to be a factual question because sometimes you can send things to the place where, you know, you were transferred from and that's a valid grievance. I suppose it could be the other way around too. So it's a factual issue. The magistrate judge, if I recall correctly, found as a factual matter that Mr. Johnson had the capability to exhaust the grievance process at the Forsyth County Jail. So the magistrate judge found he did have the capability to do that and a factual finding like that . . . That wasn't a determination that was adopted by the district court, though, was it? It wasn't. The district court decided to size up all of that and not address it. But my contention is that the magistrate judge made that finding. We're allowed to rely upon that. It was not overruled, even though the district judge did not decide to go with that ground for dismissal. So, bottom line, when the district court makes factual findings like the magistrate judge did, it's reviewed for clear error as I understand it. Clearly, you know, is it clearly erroneous? So to refresh my recollection, now the magistrate judge determined that he had the ability to file a grievance, but he didn't do it? That's my understanding, Your Honor. That's my recollection of reading the . . . How do you do it when you're at a different facility? Aren't the grievance procedures specific to this facility? Like different prisons have different grievance procedures, right? The Department of Corrections, the Georgia Department of Corrections procedures is going to be different from the Forsyth County Jail. And just filing a grievance with the Department of Corrections through their system, there's no reason that would ever get to the Forsyth County Jail necessarily. But that doesn't mean that Mr. Johnson can't write out a grievance and send it from prison, wherever he is, to the Forsyth County Jail. So that just raises the question because one of the things he's challenging is the postcard only policy. So if he were to appeal . . . let's assume that he could appeal the grievance result, right, from outside of the jail. Could he do it on a postcard? Because if he couldn't do it on a postcard, is that an issue? Well, the postcard only jail mail policy applies to inmates who are incarcerated at Forsyth County Detention Center. So if he's sending something from a prison to the administrative staff rather than to an inmate at Forsyth County Jail, his mail, you know, his grievance from the Department of Corrections is not subject to the postcard only policy. Is that because he's in a different jail that doesn't have the postcard only policy? Correct. Correct. So Department of Corrections, I don't know of any . . . well, I'm not sure about their policy, but I don't think they have such a policy there. So my point is the Forsyth County postcard only policy would not apply to his incoming mail to the administrative staff at Forsyth County Jail. Now, we do have some authority where you're excused from the grievance requirement, filing a grievance, exhausting your administrative remedies if you're no longer confined. That's clear in the law. If you're no longer confined, you're excused from the exhaustion requirement. So why shouldn't we apply that same logic when a prisoner is housed at another facility? So if I understand you correctly, or if I understand the precedent you are citing correctly, I think what the rule you're citing to is that if I'm a prisoner and then I'm released from all incarceration and then I file my lawsuit, I am not subject to the Prison Litigation Reform Act. I'm no longer incarcerated whatsoever, and so the PLRA does not apply to me. We're outside of that rule because Mr. Johnson has always been incarcerated when he filed his lawsuits. So the PLRA attaches to any inmate lawsuit that's filed when the inmate is in jail or prison. So the state can frustrate a prisoner's ability to exhaust administrative remedies by transferring him around? Can frustrate? Yeah. A state can send him to a different facility and make it more difficult for him to file a grievance. He was no longer at the facility where he's complaining about his conditions of confinement. I suppose that could be a practical effect of transfers, and I suppose that in a theoretical world, some person out of jail could have that intent. There's nothing like that here. There's no evidence of anything like that. Mr. Johnson was transferred back and forth from South County Detention Facility primarily because he's just there on a transient basis for court hearings. So there's a statistic like he was there for 30 days over a two-year period, primarily because he's just there for court. Judge Abudu asked counsel about the denial of the motion to compel, and he argues that the district court abuses discretion by denying his motion to compel documents that are essential to his claim. Most importantly, the conditions of confinement claim. Let's see. He spent 90 days in an excessively cold maximum isolation unit, and he was unable to have access to his materials there. So he's seeking documents, it seems to me, that are highly relevant and material to his claims. For example, he says that the unit, the maximum isolation unit, is a suicide. Aren't those documents that would be essential, highly relevant to his claim? Documents that other inmates would be suicidal in the max isolation? Yeah. I don't know that he ever asked for any such documents. As a matter of his motion to compel... He filed a motion to compel, seeking those documents, and that motion was denied. He filed a motion to compel, and in his motion to compel, I don't think he specified any such documents like that. But wouldn't that be a document that would be essential to his claim, though? I rather doubt it, and I'll tell you why. He was in max iso under a deal that he made with somebody who is not a defendant in this case. He was in max iso because he wanted a lot of documentation. His legal paperwork, okay, like boxes full of legal paperwork, and normal inmates in the normal jail population are allowed to keep some paperwork, but not the many boxes that he wanted to keep. So the deal was... It was 90 days he spent in there. He says it was... All day, all day. Well, he says it was, I think as the district court described it, a Hobson's choice. Either he's not in isolation and doesn't have access to his documents, or he is in isolation for 90 days just so that he can access legal materials. That's what he presents. His claim is, yes, he stayed there 90 days because, and our contention is, one, our defendants, the people at issue in this case, didn't make any of those decisions. But secondly, Mr. Johnson could have left max isolation any time he wanted to. Yes, but if he left, he wouldn't be able to have his materials with him. That's why they gave him that Hobson's choice. If you want access to your materials, you've got to have it in the maximum isolation unit. And he, I think, and so he's... One of his claims is he's challenging the conditions of his confinement. And I believe he's stating that other inmates who were housed in this maximum isolation unit, it's so bad there that they committed suicide. And if that's the case, any documents to that effect would be relevant to his conditions of confinement claim, wouldn't it? Again, Your Honor, I don't know of such documents and I rather doubt it. Maybe it's discoverable. I don't think he ever asked for any such documents. But that somebody else made a decision to commit suicide in that particular area, I think is... Not just someone else, multiple individuals based on who were in the same facility. And I think as Judge Wilson described it, so bad that people decided they wanted to end their lives. With due respect, Your Honor, folks make that sort of decision for all kinds of reasons. Exactly. And that is very much understood. And it's a very serious decision to make. So I think the point is, in this case, what he's arguing is those individuals made that decision because the conditions of confinement and max isolation were so horrendous that they didn't want to continue their lives. And I guess the question is, how is that not relevant to a prisoner's claim regarding conditions? Well, I'll say that I don't think he ever asked for those documents. I don't think that he presented that to the district court as such. When you file a mission to compel, you're supposed to say, here's my request. Okay. So, all right. So your recollection of the record is a little shaky. Let's assume that we're relying on what he's argued, and that is the case that he argued and requested these documents. How would that not be relevant? Yeah. That somebody else made a decision to commit suicide, arguably because of the conditions, I don't think it's relevant because Mr. Johnson's situation is his own situation. He can certainly testify to whatever conditions he is complaining about. The lights were on. It was too cold for me. That kind of thing, regardless of some decision that somebody else made for their own reasons. Okay. What about the qualified immunity issue? For me, I just want to clarify. So this court reversed the district court and granted Fee and Hughes qualified immunity. But on appeal here, he's arguing that the district court abused its discretion in denying his motion to compel, discovery that he believes was directly relevant to the qualified immunity issue. So if we decide that the court did abuse its discretion and that he was entitled to that information, what happens to our prior decision regarding qualified immunity? The decision is final. There's no going back on that. What documents did he ask for in his motion to compel? If he didn't ask for documents about the conditions at the maximum isolation unit? My recollection, which the record is going to show it better than my recollection, but my recollection is that his contention in his motion to compel was I want internal documentation, emails and so forth about my hernia situation and the transfer to Augusta State Medical Center. That's my recall about what he contended he didn't get and that he wanted. Judge Rosenbaum, you talked about the exhaustion defense and being filed in a summary judgment motion rather than in the initial motion to defend. I think it was in the answer you all ultimately filed, wasn't it? It was written in the answer, Your Honor. So I just want to address that procedural issue and put it to bed if there's any issue about that. The rule is in a motion to dismiss, well, you can't file successive motions to dismiss. You're supposed to file one with everything that is in the motion to dismiss under Rule 12b. On the other hand, if you're filing under Rule 12c or Rule 56 or some other motion like that, like a motion for summary judgment, then there's no problem, there's no issue. But even if there was an issue... Well, I mean, but the question is, do you forfeit the affirmative defense by not raising it in the motion to dismiss? And the answer is no, especially if you raise it in your answer, if you raise the defense in your answer, then you can... And what is your authority for that? So I have toward the last pages of our supplemental brief. David B. Columbia, Presoria Independent School District, 855 F. 3rd, 681. It's a Fifth Circuit case, 2017. Lace v. Bank of America National Association, 804 F. 3rd, 316. It's a Third Circuit case. Albers v. Board of County Commissioners in Jefferson County, 771 F. 3rd, 697. This, by the way, is on page 19 of our supplemental brief, the last brief that we filed. And do you have any Eleventh Circuit authority for that? Because I cited other circuits that suggested, suggest that I couldn't find Eleventh Circuit authority directly on that point. So that's an open question in our, in our circuit. I don't know that it necessarily is. Have we decided the other way? I'm sorry? Have we ruled the other way? I think we have suggested in Bryant that it should be brought up in the motion to dismiss, haven't we? In Bryant, if I recall correctly, the court is saying how procedurally this should work and because it's a defense in abatement, then it should be brought up under a sort of motion to dismiss idea rather than a summary judgment merits sort of thing. But when and how it can be raised is kind of a matter of preference with the district court and the district court, you know, even if I had filed a second motion to dismiss raising this, the district court had discretion to entertain that motion. Or had I filed a second motion to dismiss, the district court could have said, this is a second motion to dismiss. I'm not going to entertain it. But we didn't file it as a second motion to dismiss. We filed it as a, in the context of summary judgment and could have filed it as a Rule 12c motion, which really does fall afoul of the rule that we're talking about, the four-feature rule that we're talking about. So, I just don't think that procedural issue is a winner for Mr. Johnson. I think we have your argument. Thank you, Mr. Waymeyer. And Mr. Anderson, you've reserved some time for rebuttal. Yes, Your Honor. Briefly, just going back to the exhaustion issue, again, under the PLRA, he is a prisoner, so I agree with counsel there that he's still subject to the PLRA. But you only have to exhaust, quote, available remedies. And so, the first question is, if you are no longer in the facility, does the facility policy even allow you to exhaust? Because if it doesn't, there is no available remedy to you. So, that's a question about the policy. So, does their policy as written extend once you leave the four walls of the jail? And if not, it's not available to you. And the magistrate judge did actually make a finding that he could have continued to appeal it after he left. The question is, what do we do with that finding since the district court didn't adopt it? Right. So, I think that this court reviews what the district court does, not what the magistrate court does. And again, Mr. Johnson, in his objection, said, you know, hey, I didn't even get the form that I needed. How could I do it without the form? And again, that's a factual question. Did he get the form? Did he not get the form? If he didn't have the form, you know, could it be aggrieved or not? And I just don't think that you can review what the magistrate judge did. You can only review what the district judge did. And the district judge didn't sort of make that finding. And for the state to say, well, we want to rely on what the magistrate judge did, that's not true because they say that they want a judgment on the merits. And if it's exhausted, you're not entitled to a judgment on the merits. It's a dismissal without prejudice. Let me ask you, if you don't mind, about the conditions of confinement claim. Did he challenge the policy of not being able to have all of his papers in his cell? I know that he... I mean, it was a practical problem, right? They couldn't all fit into a cell. Correct. And so, are you asking, is he challenged in court or with the guards or... I'm unclear as to your question, Your Honor. In court. So, I mean, I know he challenged the conditions of being in the isolation unit. But I'm wondering sort of a prior question to that. I mean, the reason he was in that unit was because that was where all of his papers could fit. And he was told he could leave at any time. It might have been Hobson's choice. But I'm wondering if he challenged the jail's policy that you could only have all of your documents in either your cell or if they or whether he might have said, you know, you should be able to have them in a conference room or whatever. You know what I'm saying? Did he challenge that policy as opposed to the conditions of confinement at the isolation unit? Because if he didn't challenge the underlying policy and he's able to leave whenever he wants, even though it's a Hobson's choice, I think it makes it a much more difficult question. Your Honor, I don't know the answer to that off the top of my head. This record is so large. And as I said, I wasn't the lawyer below. But I think that, you know, one, he's got an access to the court's claim, right? And so if he's not allowed to have his papers and he can't go to the law library, it's sort of part and parcel of the same thing that he is challenging. And so I would say that you might just sort of lump it under the access to the court's issue that he's complaining about. Secondly... But then we also get back to he has to show an injury. Correct. For retrospective relief. And then you have to show a sort of a case in controversy if you want sort of prospective or declaratory relief. Yes, Your Honor. It has to be enough to satisfy Article 3. The issue... I would say, you know, you can't raise it under 12C because that just looks at the pleadings. And under Rule 8B, anything, any affirmative defense is deemed avoided in the pleading. And so you can't actually raise it under 12C. And as a policy matter, it's unclear to me why this court would want to allow jails to sit on this issue, use up court time when we could tee it up first. And so if you look at the Seventh Circuit's decision in Pavey, they are very... They have given very clear instructions to the district court about what you have to do when someone asserts exhaustion in the answer, that you can't have any other discovery about any other issue. You go right to that and you have a hearing at the earliest possible opportunity. Because otherwise, I mean, this court could have avoided a prior appeal if we had sort of teed up exhaustion and they were right about it. And then finally, there was a question about... I want to do with the motion to compel. If I can have one other minute, Your Honor. You can. Okay. I would disagree that it's res judicata here because we're still within the same lawsuit. Instead, the correct doctrine is the law of the case doctrine. And so that's a different doctrine and that is subject to exceptions where you can show that there are new facts that weren't available to the court at the time. And so it's not res judicata because we have never had a final judgment that has been affirmed on appeal. And so I would disagree over there that res judicata is even remotely relevant here. Thank you, Your Honor. Thank you. Mr. Anderson, you were appointed by the court to represent Mr. Johnson. It's a big record and a complicated case and we thank you for your service. Thank you. Thank you, Mr. Wehmeyer. And the next...